IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

VANSHDEEP SINGH,

Petitioner,

vs.

JEROME J. KRAMER, Sheriff of Lincoln County Jail; DAVID J VENTURELLA, Acting Director of Immigration and Customs Enforcement; MARKWAYNE MULLIN, Secretary of the U.S. Department of Homeland Security; and TODD BLANCHE, Attorney General of the United States,

Respondents.

**7:26CV5020**

**MEMORANDUM AND ORDER DENYING VERIFIED PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241**

Petitioner Vanshdeep Singh, who is a citizen of India, filed a Verified Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 on October 22, 2026. Filing 1. In his Petition, Singh "challenges the Government's abrupt revocation of Petitioner Vanshdeep Singh's previously granted liberty without advance notice, without an individualized determination that he violated any condition of his release or presented a danger or flight risk, and without a pre-deprivation hearing." Filing 1 at 1 (¶ 1). He seeks *inter alia* either his immediate release or in the alternative an individualized hearing before an immigration judge to consider his continued detention. Filing 1 at 4 (¶ 15). The Court entered an Order to Show Cause on October 29, 2026, directing Respondents to file Returns and granting Singh leave to file a Reply. Filing 4 at 5 (¶¶ 2–3). The Order to Show Cause stated, "Upon the filing of Respondents' return(s) and Singh's reply, the Court will determine whether or not to set a hearing on this matter prior to disposition." Filing 4

at 5 (¶ 4). Federal Respondents filed their Return on November 9, 2026. Filing 6.[1] After reviewing the parties' written submission, the Court concludes that Singh's Petition is denied, without a hearing, for the reasons set out below.

## I. INTRODUCTION

Singh alleges that he is a native and citizen of India who entered the United States on February 11, 2022, without inspection, when he was a minor. Filing 1 at 5–6 (¶¶ 24–25). The Declaration of Deportation Officer A. Bates, submitted by Federal Respondents, states that a review of Department of Homeland Security (DHS) records shows that Singh entered the United States at or near San Luis, Arizona, and that he was not admitted or paroled into the United States by an immigration officer. Filing 8 at 3 (¶¶ 10–11). After entry, Singh was detained on a Form I-200 Warrant for Arrest, but he was released by the DHS on an Order of Release on Recognizance. Filing 1 at 6 (¶ 27); Filing 1-3. DO Bates clarifies that Singh was in the custody of the Office of Refugee Resettlement (ORR) prior to his release on recognizance. Filing 8 at 3 (¶¶ 12–13). DO Bates also explains that because Singh was released by ORR to his sponsor, ICE played no part in the release decision. Filing 8 at 3. DO Bates also explains that Singh was released on April 14, 2022. Filing 8 at 3 (¶¶ 13).

On May 21, 2022, Singh was served with a Notice to Appear, Form I-862, charging that he is subject to removal under the following provision:

> 212(a) (6) (A) (i) of the Immigration and Nationality Act [8 U.S.C. § 1182(a)(6)(A)(i)], as amended, in that you are an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General.

Filing 1-2 at 1; Filing 1 at 6 (¶ 29); Filing 8 at 3 (¶ 14) (explaining the Notice to Appear was served by mail on May 21, 2022). Singh was placed in removal proceedings pursuant to Immigration and

---

[1] Federal Respondents are all but Jerome J. Kramer, the Sheriff of Lincoln County, the State Respondent. Sheriff Kramer was served with the Petition, Filing 5, but he filed no Return.

Nationality Act (INA) § 240, 8 U.S.C. § 1229a, and during those proceedings he alleges that he pursued an application for asylum. Filing 1 at 6 (¶ 30); Filing 8-4 (Singh's I-589, Application for Asylum and for Withholding of Removal, dated August 8, 2022). He contends that after his release on recognizance he complied with all immigration requirements. Filing 1 at 6 (¶¶ 31–32).

Singh alleges that on July 22, 2026, he was arrested, although no criminal charges followed from that arrest. Filing 1 at 7 (¶ 36). He alleges that on October 12, 2026, he was stopped "for an inspection." Filing 1 at 7 (¶ 39). Singh alleges that during this encounter he was referred to Immigration and Customs Enforcement (ICE) after officers determined that he had a pending immigration case, and he was taken to an ICE office, "notwithstanding his prior release on recognizance, pending asylum proceedings, and continued compliance with immigration reporting requirements." Filing 1 at 7 (¶ 41). DO Bates provides rather more detail about the stop and arrest:

> 16. On October 12, 2026, Petitioner was encountered by the Nebraska State Patrol during a traffic stop, as a result of a CMV [Commercial Motor Vehicle] inspection along I-80E MM-179, near North Platte, NE. NSP advised Petitioner he was being placed out of service due to multiple DOT violations that included; false log, CMV-radar detector and no operator's license (expired). ERO North Platte was contacted to run record checks on Petitioner. Record checks indicated Petitioner was not in possession of valid immigrant documents allowing him to enter, and/or remain in the United States lawfully. Pursuant to ICE's 287(g) [8 U.S.C. § 1357(g)] program, the State Trooper placed Petitioner under arrest before a Warrant of Arrest could be issued due to the Petitioner being considered a flight risk since he was on the interstate in a working vehicle and known to be uncooperative with ICE. Petitioner was transported from that location, by ICE officials, to the North Platte ICE Office, where he was served Exhibit B [the I-200 Warrant for Arrest]. Petitioner was detained pursuant to INA § 235(b)(2)(A) [8 U.S.C. § 1225(b)(2)(A)] and placed in removal proceedings and charged under 212(a)(6)(A)(i)(I) [8 U.S.C. § 1182(a)(6)(A)(i)(I)] (an alien present without admission or parole).

Filing 8 at 3–4 (¶ 16).

Singh contends that officers at the ICE office did not provide him with any specific explanation for his arrest or identify any violation of his prior release conditions. Filing 1 at 7 (¶¶ 42–43). He remains detained at the Lincoln County Jail in North Platte, Nebraska. Filing 1 at 9 (¶ 58).

In his Petition, Singh asserts five claims for habeas relief. In Count One, Singh asserts a claim captioned, "Violation of Petitioner's Fifth Amendment Right to Procedural Due Process." Filing 1 at 18 (emphasis omitted). Singh asserts, "By revoking Petitioner's release on recognizance without advance notice, a meaningful opportunity to be heard, or an individualized pre-deprivation determination, Respondents violated Petitioner's procedural due process rights under the Fifth Amendment." Filing 1 at 21 (¶ 125). In Count Two, Singh asserts a claim captioned, "Violation of the Immigration and Nationality Act — Unlawful Revocation of Previously Granted Release and Improper Application of Detention Authority." Filing 1 at 21 (emphasis omitted). This claim asserts that if Federal Respondents rely on 8 U.S.C. § 1225(b) to detain Singh, he is entitled to judicial review of that alleged detention authority, and to the extent that 8 U.S.C. § 1226(a) is the basis for his detention, Federal Respondents failed to comply with the governing statutory requirements. Filing 1 at 23 (¶¶ 141–142). In Count Three, Singh asserts a claim captioned, "Violation of the Fourth Amendment — Unreasonable Seizure and Warrantless Immigration Arrest." Filing 1 at 23–24 (emphasis omitted), 25 (¶ 156). In Count Four, Singh asserts a claim captioned, "Violation of Petitioner's Fifth Amendment Right to Substantive Due Process." Filing 1 at 25 (emphasis omitted). He alleges "that Respondents' actions violated his substantive due process rights to the extent the re-detention was arbitrary and lacked a constitutionally sufficient justification." Filing 1 at 26 (¶ 167). Lastly, in Count Five, Singh asserts a claim captioned, "Violation of the Administrative Procedure Act, 5 U.S.C. §§ 702 and 706 — Arbitrary and Capricious Revocation of Prior Release." Filing 1 at 25 (emphasis omitted). Singh asserts, "[T]o the extent the revocation constitutes final agency action reviewable under the [Administrative Procedure Act (APA)], Respondents acted arbitrarily and capriciously by failing to provide a reasoned explanation addressing the prior release determination, Petitioner's compliance history, and the circumstances warranting renewed detention." Filing 1 at 27 (¶ 176).

## II. LEGAL ANALYSIS

### A. Standards for § 2241 Habeas Relief

As pertinent here, the habeas statute at issue, 28 U.S.C. § 2241, provides in pertinent part that a writ of habeas corpus extends to a person "in custody in violation of the Constitution or laws or treaties of the United States . . . ." 28 U.S.C. § 2241(c)(3). "[A] habeas court is 'not bound in every case' to issue the writ." *Munaf v. Geren*, 553 U.S. 674, 693 (2008) (quoting *Ex parte Royall*, 117 U.S. 241, 251 (1886)). Instead, "[t]he habeas statute provides only that a writ of habeas corpus '*may* be granted.'" *Id.* (quoting 28 U.S.C. § 2241(a), with emphasis added by the Supreme Court). Indeed, the applicable procedural statute for a writ of habeas corpus pursuant to § 2241 states in part,

> A court, justice or judge entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto.

28 U.S.C. § 2243. Thus, "[u]nder 28 U.S.C. § 2243, '[a] court, justice or judge entertaining an application for a writ of habeas corpus' must schedule a hearing on the matter unless it is clear from the application that a petitioner is not entitled to relief." *Crayton v. United States*, 27 F.4th 652, 656 (8th Cir. 2022).

"Habeas is at its core a remedy for unlawful executive detention." *Manaf*, 553 U.S. at 693 (citing Hamdi v. Rumsfeld, 542 U.S. 507, 536 (2004) (plurality opinion)). To put it another way, "Habeas has traditionally been a means to secure *release* from unlawful detention . . . ." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020) (emphasis in the original); *Munaf*, 553 U.S. at 693 ("The typical remedy for such detention [under § 2241(c)(3)] is, of course, release." (citing *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973), which states, "[T]he traditional function of the writ is to secure release from illegal custody")). The Supreme Court has recognized that § 2241(c)(3) confers on a district court jurisdiction to hear habeas corpus challenges by aliens to

the legality of their detention. *Rasul v. Bush*, 542 U.S. 466, 483–84 (2004) ("[Alien] Petitioners contend that they are being held in federal custody in violation of the laws of the United States. . . . Section 2241, by its terms, requires nothing more."); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) ("We note at the outset that the primary federal habeas corpus statute, 28 U.S.C. § 2241, confers jurisdiction upon the federal courts to hear these cases," which were brought by aliens challenging their detention after they were ordered removed (citing 28 U.S.C. § 2241(c)(3))). District Courts in this Circuit and elsewhere agree that a habeas petitioner under § 2241 bears the burden of demonstrating by a preponderance of the evidence that his or her detention is unlawful. *See Maldonado v. Olson*, No. 25-CV-3142 (SRN/SGE), 2025 WL 2374411, at *4 (D. Minn. Aug. 15, 2025) (collecting cases).

After reviewing the parties' written submissions, the Court concludes that neither an evidentiary hearing nor oral argument is required because a conclusion can be reached on the legal issues presented and because even taken as true Singh's allegations of fact fail to state a claim for habeas relief. *See Ruiz v. Norris*, 71 F.3d 1404, 1406–07 (8th Cir. 1995) (explaining that "an evidentiary hearing [in a habeas case] is unnecessary and not required in cases 'where the petitioner's allegations, even if true, fail to state a claim upon which habeas relief can be granted'" (quoting *Amos v. State*, 849 F.2d 1070, 1072 (8th Cir. 1988))). Therefore, the Court has considered Singh's Petition on the parties' written submissions without an evidentiary hearing or oral argument.

### B. Singh Is Not Entitled to Relief under § 2241

The Court will consider each of Singh's claims for habeas relief in turn.

#### *1. Singh Is Not Entitled to Relief on His "Procedural Due Process" Claim*

In Count One, Singh asserts a claim captioned, "Violation of Petitioner's Fifth Amendment Right to Procedural Due Process." Filing 1 at 18 (emphasis omitted). He contends that the

adequacy of procedural protections is evaluated under the balancing test in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Filing 1 at 19 (¶ 112). He asserts,

> 115. . . . ICE officers detained Petitioner without providing a meaningful explanation for revoking his previously granted liberty or affording him an opportunity to contest the decision.
>
> 116. Before revoking Petitioner's liberty, Respondents failed to provide:
>
> a. Advance notice that his release on recognizance would be revoked;
>
> b. Notice identifying any alleged violation of his release conditions;
>
> c. Notice of any individualized factual circumstances warranting renewed detention;
>
> d. A meaningful opportunity to contest the proposed revocation;
>
> e. An individualized pre-deprivation custody determination addressing danger, flight risk, or compliance; or
>
> f. A pre-deprivation hearing before a neutral decisionmaker.

Filing 1 at 19–20 (¶¶ 115–116), 21 (¶ 125) ("By revoking Petitioner's release on recognizance without advance notice, a meaningful opportunity to be heard, or an individualized pre-deprivation determination, Respondents violated Petitioner's procedural due process rights under the Fifth Amendment."). Although Federal Respondents identify Singh's procedural due process claim as Count Four, they argue that the constitutional procedural requirements are satisfied by compliance with the applicable immigration detention statute, 8 U.S.C. § 1225(b)(2)(A). Filing 6 at 9. They point out that the statute mandates detention while removal proceedings are pending. Filing 6 at 9. They argue further that the Eighth Circuit has recognized that such detention meets applicable constitutional standards. Filing 6 at 10 (citing *Banyee v. Garland*, 115 F.4th 928, 933 (8th Cir. 2024)). In reply, Singh argues that detention pursuant to 8 U.S.C. § 1225(b)(2)(A) does not place such detention beyond constitutional scrutiny, and he reiterates that the *Mathews* standard applies to determine whether there has been a due process violation. Filing 9 at 3.

The Court concludes that Singh's detention pending removal does not require application of a balancing test because "[t]he rule has been clear for decades: '[d]etention during deportation proceedings [i]s . . . constitutionally valid.'" *Banyee v. Garland*, 115 F.4th 928, 931 (8th Cir. 2024) (citing *Demore v. Kim*, 538 U.S. 510, 523 (2003)). More specifically, in *Banyee*, the Eighth Circuit explained that the Supreme Court's decisions in *Demore* and *Zadvydas v. Davis*, 533 U.S. 678 (2001), "leave no room for a multi-factor 'reasonableness' test," such as the one in *Mathews*, because the Supreme Court has instead opted for "a bright-line rule" that "the government can detain an alien for as long as deportation proceedings are still 'pending.'" *Banyee*, 115 F.4th at 933 (citing *Demore*, 538 U.S. at 527 (majority opinion)). Thus, the Court will not apply a balancing test to Singh's due process claim challenging his detention because his removal proceedings are still pending.

As to the proper analysis, in *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026), the Eighth Circuit explained,

> In defining [applicant for admission], § 1225(a)(1) reads as follows:
>
> > An alien present in the United States who has not been admitted or who arrives in the United States ... shall be deemed for purposes of this chapter an applicant for admission.

*Avila*, 170 F.4th at 1133 (quoting § 1225(a)(1)). Singh was present in the United States and he was not admitted, so he plainly fell within the definition of an "applicant for admission." See 8 U.S.C. § 1225(a)(1). As the Eighth Circuit explained in *Avila*, "[Section] 1225(b)(2)(A) authorizes detention without bond for 'an alien who is an applicant for admission, if . . . an alien seeking admission is not clearly and beyond a doubt entitled to be admitted.'" *Avila*, 170 F.4th at 1132 (quoting § 1225(b)(2)). Singh has never been admitted; thus, he was subject to mandatory detention as an "applicant for admission" when he was detained. *Id.* The Court sets out the reasons for the proper application of § 1225(b) to Singh in more detail in the next subsection.

On this claim, Singh fails to carry his burden under § 2241 to show by a preponderance of the evidence that his detention is unlawful. *See Maldonado v. Olson*, 2025 WL 2374411, at *4.

2. *Singh Is Not Entitled to Relief on His "INA Violation" Claim*

In Count Two, Singh asserts a claim captioned, "Violation of the Immigration and Nationality Act — Unlawful Revocation of Previously Granted Release and Improper Application of Detention Authority." Filing 1 at 21 (emphasis omitted). Singh does not challenge *Avila* as controlling law, but he does argue that his "circumstances present an additional question concerning the legal consequences of DHS's prior affirmative release determination and its subsequent revocation." Filing 1 at 22 (¶¶ 135–136). This claim asserts that if Federal Respondents rely on 8 U.S.C. § 1225(b) to detain Singh, he is entitled to judicial review of that alleged detention authority, and to the extent that 8 U.S.C. § 1226(a) is the basis for his detention, Federal Respondents failed to comply with the governing statutory requirements. Filing 1 at 23 (¶¶ 141–142). Federal Respondents argue that § 1225(b) applies and mandates Singh's detention because Singh is an applicant for admission who is not clearly entitled to admission under *Avila*. Filing 6 a 4. Federal Respondents argue that Singh's prior release by ORR on recognizance does not change this fact. Filing 6 at 4. In reply, Singh argues that Federal Respondents rely upon the interpretation of § 1225(b) in *Avila*, but they "leav[e] unanswered the circumstances under which Petitioner's longstanding liberty was terminated," again asserting that *Mathews* applies to that question. Filing 9 at 6.

This Court finds the Eighth Circuit's decision in *Avila* is largely controlling on this issue, notwithstanding Singh's attempts to evade that decision's impact. In *Avila*, the Eighth Circuit rejected a reading of *Jennings v. Rodriguez*, 583 U.S. 281 (2018), as interpreting § 1225 to apply to aliens detained at the border and § 1226 to apply to aliens detained in the interior. 170 F.4th at 1136 (explaining that "this characterization was offered only as general background information"

not as resolution of an interpretation issue). The Eighth Circuit explained that even if § 1226 generally authorizes the Government to detain certain aliens already in the country, "this does not preclude other statutory provisions—such as § 1225(b)(2)(A)—from also applying to such aliens." *Id.* (citing *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 505 (5th Cir. 2026), and 8 U.S.C. § 1225(a)(1)). The *Avila* court explained further that § 1225(a)(1) is not limited to an "arriving alien"; instead, it applies to "[a]n alien present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1). *Id.* at 1133. In *Avila*, the Eighth Circuit soundly rejected a reading of § 1225(b)(2)(A) as treating "applicant for admission" and "seeking admission" as separate elements. *Id.* at 1133–35 (concluding that the two phrases were "equivalent," so that "seeking admission" was not a separate element under § 1225(b)(2)). Because there is no evidence or even an allegation that Singh arrived at a port of entry and was admitted, he fell within the definition of an "applicant for admission" as "[a]n alien present in the United States who has not been admitted" set out in § 1225(a) as interpreted by the Eighth Circuit when he was encountered in the United States on October 12, 2026.

Next, the court in *Avila* stated, "[Section] 1225(b)(2)(A) authorizes detention without bond for 'an alien who is an applicant for admission, if . . . an alien seeking admission is not clearly and beyond a doubt entitled to be admitted.'" *Avila*, 170 F.4th at 1132 (quoting § 1225(b)(2)). DO Bate's declaration shows that Singh entered the United States at or near San Luis, Arizona, and that he was not admitted or paroled into the United States by an immigration officer. Filing 8 at 3 (¶¶ 10–11). Neither the statute nor *Avila* prohibits law enforcement officers besides immigration officers from reviewing an alien's immigration records, if any, to determine whether the alien has already been clearly and beyond a doubt determined to be entitled to be admitted. Where no DHS or ICE official ever made any determination that Singh is "clearly and beyond a doubt entitled to be admitted," a law enforcement officer could act on the information provided to him by ICE from

a review of DHS records, as occurred in this case. Singh was then properly detained pursuant to § 1225(b)(2)(A). In the circumstances of the stop of Singh's commercial vehicle for a commercial vehicle inspection, the state trooper did not conduct an immigration "inspection"; rather, the state trooper acted on the lack of an "inspection" by an immigration officer and the lack of a determination by any immigration officer that Singh was entitled to be admitted. Because Singh's detention is proper pursuant to § 1225(b), there is no statutory authorization for a bond hearing. *See Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018) (explaining that "neither § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings").

On this claim, Singh fails to carry his burden under § 2241 to show by a preponderance of the evidence that his detention is unlawful. *See Maldonado v. Olson*, 2025 WL 2374411, at *4.

*3. Singh Is Not Entitled to Relief on His "Unlawful Arrest" Claim*

In Count Three, Singh asserts a claim captioned, "Violation of the Fourth Amendment — Unreasonable Seizure and Warrantless Immigration Arrest." Filing 1 at 23–24 (emphasis omitted). He contends, "[I]f his October 12, 2026 arrest was effected by immigration officers without a warrant under § 1357(a)(2), Respondents lacked the required individualized basis to conclude that he was likely to escape before a warrant could be obtained." Filing 1 at 24 (¶ 153). He asserts that his warrantless arrest violated the Fourth Amendment. Filing 1 at 25 (¶ 156). Federal Respondents argue that Singh's arrest was lawful and, in any event, any challenge to his arrest is not cognizable in habeas proceedings. Filing 6 at 10. Federal Respondents argue this is so, because the challenge to Singh's arrest is not a challenge to his custody for immigration purposes. Filing 6 at 11. Singh counters that he made no attempt to flee, and that his presence with a functioning vehicle on an interstate highway is insufficient excuse for a warrantless arrest. Filing 9 at 3, 12. He also argues that there is no evidence substantiating an allegation that he had previously been uncooperative with ICE. Filing 9 at 13.

This claim does not state a claim on which habeas relief can be granted. First, this Court has held that an unlawful arrest is not the basis for a cognizable claim for § 2241 habeas relief. *See Santiago Lopez v. Trump*, No. 4:26CV3286, 2026 WL 3151013, at *9–10 (D. Neb. Oct. 21, 2026) (explaining that an allegedly unlawful arrest is not a basis for § 2241 relief which at its core is about release from custody). Even if the Court were to assume an unlawful arrest could be the basis for a § 2241 habeas claim, Singh has not sufficiently pleaded such a claim. The factual allegations of the circumstances in which Singh was detained are insufficient for a plausible claim of an illegal arrest where they show that Singh did indeed pose a risk of flight justifying a warrantless arrest where he was in or in proximity to his vehicle on an interstate highway. *United States v. Quintana*, 623 F.3d 1237, 1241 (8th Cir. 2010); *see also id.* at 1242 (explaining that the "constitutional[ ] valid[ity]" of detention pending deportation means that the usual limits on *Terry* stops "do[ ] not apply to ... administrative arrest[s] based upon probable cause that an alien is deportable").

On this claim, Singh fails to carry his burden under § 2241 to show by a preponderance of the evidence that his detention is unlawful. *See Maldonado v. Olson*, 2025 WL 2374411, at *4.

*4. Singh Is Not Entitled to Relief on His "Substantive Due Process" Claim*

In Count Four, Singh asserts a claim captioned, "Violation of Petitioner's Fifth Amendment Right to Substantive Due Process." Filing 1 at 25 (emphasis omitted). He alleges that the "abrupt revocation of his longstanding release" was without an identified individualized justification and without meaningful consideration of his compliance history, so that it constitutes an arbitrary exercise of governmental detention authority. Filing 1 at 26 (¶ 163). He alleges "that Respondents' actions violated his substantive due process rights to the extent the re-detention was arbitrary and lacked a constitutionally sufficient justification." Filing 1 at 26 (¶ 167). In their response to Singh's substantive due process claim, which they erroneously identify as Count One,

Federal Respondents again rely on *Banyee* as upholding immigration detention exceeding one year during removal proceedings. Filing 6 at 7–8. Federal Respondents point out that the plaintiff in *Banyee* was a former lawful permanent resident with a considerably stronger connection to the United States than Singh has where he is an illegal alien. Filing 6 at 8. In reply, Singh argues that the authorities on which Federal Respondents rely do not eliminate judicial consideration of a properly presented constitutional challenge to Singh's detention as arbitrary. Filing 9 at 20.

The Court finds that this claim is simply a repackaging of Singh's other claims that his re-detention without a bond hearing or proper showing violates his due process rights. For the reasons stated above, this claim also fails. Essentially, Singh's re-detention pursuant to § 1225 without a bond hearing—which was not for a punitive purpose but pending removal—is proper, is not arbitrary, and does not require a showing of dangerousness or flight risk.

On this claim, Singh fails to carry his burden under § 2241 to show by a preponderance of the evidence that his detention is unlawful. *See Maldonado v. Olson*, 2025 WL 2374411, at *4.

*5. Singh Is Not Entitled to Relief on His "APA Violation" Claim*

In Count Five, Singh asserts a claim captioned, "Violation of the Administrative Procedure Act, 5 U.S.C. §§ 702 and 706 — Arbitrary and Capricious Revocation of Prior Release." Filing 1 at 25 (emphasis omitted). Singh asserts, "[T]o the extent the revocation constitutes final agency action reviewable under the [Administrative Procedure Act (APA)], Respondents acted arbitrarily and capriciously by failing to provide a reasoned explanation addressing the prior release determination, Petitioner's compliance history, and the circumstances warranting renewed detention." Filing 1 at 27 (¶ 176). Federal Respondents argue that ICE did not arbitrarily revoke Singh's prior release, because that release was by ORR, while ICE exercised independent statutory authority to detain Singh under § 1225(b)(2)(A). Filing 6 at 14. Federal Respondents argue that nothing in § 1225 requires ICE to adopt ORR's custodial assessment or treat it as binding. Filing

6 at 15. Federal Respondents argue further that Singh has not identified a reviewable final agency action of revoking ORR's prior release determination because the re-detention did not revisit ORR's earlier release decision. Filing 6 at 16. In reply, Singh acknowledges that the APA does not independently authorize the Court to reconsider a discretionary custody determination, but he argues that his APA claim concerns the extent to which ICE's identifiable and reviewable agency action may be examined for compliance with governing law, including sufficiency of factual support. Filing 9 at 22–23.

The Administrative Procedure Act provides in pertinent part that a reviewing court shall "(2) hold unlawful and set aside agency action, findings, and conclusions found to be--(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" 5 U.S.C. § 706(2)(A). Assuming without deciding that the decision to detain Singh after the commercial vehicle stop as an alien present in the United States without permission was final agency action—which the Court doubts—it was not arbitrary and capricious but in compliance with 8 U.S.C. § 1225(b)(2)(A). Indeed, this claim is simply another repackaging of Singh's other claims that his re-detention without a bond hearing or proper showing violates his due process rights. For the reasons stated above, this claim also fails. Essentially, Singh's re-detention pursuant to § 1225 without a bond hearing is proper, not arbitrary, and did not require a showing of dangerousness or flight risk.

On this claim, Singh fails to carry his burden under § 2241 to show by a preponderance of the evidence that his detention is unlawful. *See Maldonado v. Olson*, 2025 WL 2374411, at *4.

## III. CONCLUSION

Upon the foregoing,

IT IS ORDERED that Petitioner Vanshdeep Singh's Verified Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, Filing 1, is denied because it appears from the parties' written submissions that Singh is not entitled to habeas relief.

The Clerk of Court shall close the case.

Dated this 25th day of November, 2026.

BY THE COURT:

Brian C. Buescher
Chief United States District Judge